Manuel Benítez Flores y Carmina C. de Benítez, demandantes y apelados, *v.* Julio V. Llompart, demandado y apelante.

Núm. 6852.—*Sometido:* Junio 3, 1936. *Resuelto:* Noviembre 30, 1936.

*Dubón & Ochoteco,* abogados del apelante; *A. Ayuso,* abogado de los apelados.

El Juez Asociado Señor Travieso, emitió la opinión del tribunal.

Los esposos demandantes radicaron demanda en reclamación de los daños y perjuicios que les causara el demandado, al negarse a cumplir el siguiente contrato:

"Por el presente, nosotros don Julio V. Llompart y don Manuel Benítez Flores, hemos convenido en el siguiente contrato: don Julio V. Llompart, compra la casa y tres cuerdas de terreno de la finca de Monacillo, Río Piedras, por la cantidad de ocho mil dólares ($8,000). El señor Llompart pagará esta suma en la forma siguiente: El Sr. Llompart se hará cargo de la hipoteca de seis mil dólares que grava la finca, para pagarla y cancelarla en no menos de cuatro años. Descontará además lo que se deba atrasado de intereses de dicha hipoteca, y las contribuciones hasta el día. Y el remanente o balance hasta cubrir el importe de la venta, el Sr. Llompart lo pagará de contado al firmarse las escrituras. Siendo esto lo convenido entre las partes, firman de conformidad en esta ciudad de San Juan, hoy día 29 de agosto del 1932.—(Fdo.) Julio V. Llompart—M'l Benítez Flores.—Conforme en prorrogar a cuatro años la hipoteca con la misma cabida de terreno y condiciones actuales, según consta en la escritura de hipoteca con el Dr. Bernabe originalmente.—San Juan, P. R., agosto 30, 1932.—(Fdo.) Amelia P. Vda. de Woods.—Por N. Pasarell.''

Aparece de los autos que la señora de Benítez Flores adquirió la finca objeto de esta acción por compra a los esposos Bernabe, en 29 de abril de 1931; y que la compradora retuvo $6,000 del precio convenido, para satisfacer una hipoteca que por igual cantidad pesaba sobre la finca, a favor de la señora Amelia Palmieri Viuda de Woods y que había de vencer el día 4 de noviembre de 1932. La finca en cuestión consta de siete cuerdas y tres cuadros, con casa de cemento y madera.

Los demás hechos esenciales de la demanda ampliamente sostenidos por la prueba son: que los demandantes eran dueños de la finca, pero por conveniencia la hicieron figurar a nombre del Sr. Frank López de la Rosa y de su esposa, siendo ese hecho conocido por el demandado y por la acreedora hipotecaria señora Viuda de Woods; que habiendo vencido la hipoteca, los demandantes resolvieron vender parte de la finca, para obtener así dinero con que pagar intereses vencidos de la hipoteca y contribuciones atrasadas y hacer otras construcciones en el resto de la finca, y que fué con ese objeto que celebraron el contrato con el demandado; que antes de celebrar el referido contrato, los demandantes y el demandado se entrevistaron con el señor Frank López de la Rosa, quien convino en otorgar escritura de traspaso a favor del demandado tan pronto como fuese requerido para ello; que se obtuvo también el consentimiento de la acreedora hipotecaria para prorrogar la hipoteca por cuatro años; que a instancia del demandado los demandantes desalojaron la finca antes del 22 de septiembre de 1932, y en esa fecha la entregaron al demandado, dejándola a su disposición, quedando convenido entre ambas partes que la escritura se firmaría el 24 de septiembre de 1932; que el acto de firmar la escritura fué transferido para otro día a petición del demandado; que a principios del mes de octubre siguiente los demandantes requirieron al demandado para que concurriera a firmar la escritura de traspaso, a lo que se negó dicho demandado; que como consecuencia de la negativa del demandado la señora Woods, acreedora hipotecaria, procedió a ejecutar la hipoteca, no pudiendo los demandantes salvar la finca, ni en todo ni en parte; que los demandantes han perdido el resto de la finca, o sea las cuatro cuerdas y media que se reservaban de acuerdo con el contrato, las que están valoradas en $4,750, y han perdido también los $2,000 que el demandado debía pagar al contado al firmarse la escritura.

Se pide sentencia en contra del demandado por la suma de $6,750.

El demandado excepcionó la demanda, alegando como motivos de excepción: (*a*) defecto de partes demandantes, porque figurando la finca a nombre de Frank López de la Rosa y de su esposa, ambos debieron ser incluídos como demandantes; (*b*) defecto de parte demandada porque no se ha hecho parte a la Sra. Viuda de Woods; y (*c*) la demanda no aduce hechos suficientes para constituir causa de acción contra el demandado.

Declaradas sin lugar las excepciones previas, el demandado contestó la demanda, negando general y específicamente los hechos alegados e interponiendo algunas defensas especiales.

La corte de distrito dictó sentencia condenando al demandado a pagar a los demandantes la suma de $3,000 como importe de los daños y perjuicios causados por el incumplimiento del contrato. Y contra esa sentencia el demandado ha interpuesto el presente recurso.

Entre los errores que se imputan a la corte sentenciadora solamente merecen consideración los siguientes:

1ro. *Que la corte erró al desestimar la excepción previa basada en los alegados defectos de partes demandantes y de parte demandada.*

Se alegó en la demanda que los verdaderos dueños de la finca eran los esposos Benítez Flores, los demandantes, pero que el título figuraba a nombre del Sr. Frank López de la Rosa y de su esposa, por convenir así a los verdaderos dueños, hecho que le constaba al demandado.

El artículo 51 del Código de Enjuiciamiento Civil dispone que toda acción deberá ejercitarse en nombre de la parte realmente interesada. Manuel Benítez Flores, como parte del contrato de 29 de agosto de 1932, y él y su esposa como verdaderos dueños de la finca objeto del contrato, son las únicas partes realmente interesadas en la acción

para recobrar daños y perjuicios causados por el demandado al negarse a cumplir lo estipulado en dicho contrato. El señor López de la Rosa, mero tenedor del título, no es parte interesada en una acción por incumplimiento de un contrato de venta celebrado por el dueño real y verdadero de la propiedad, con otra persona que en el momento de celebrar el contrato tenía cabal conocimiento de los hechos, como lo tenía el demandado. Si se tratara de una acción por parte del comprador para obligar al vendedor al cumplimiento específico del contrato, en ese caso seguramente podría argumentarse con éxito que el tenedor del título debería figurar como parte demandada, para poder obligarle a traspasar el título al comprador demandante. Pero en el caso de autos somos de opinión que la corte inferior no erró al sostener que los esposos López de la Rosa no estaban obligados a figurar como partes demandantes en la acción que se ejercita.

Menos meritoria aún es la excepción que se basa en el alegado defecto de parte demandada, por no haberse incluído como tal a la acreedora hipotecaria, Sra. Viuda de Woods. La acción que se ejercita no va dirigida contra la dicha señora. La sentencia que se pide en la demanda no puede afectarla a ella en manera alguna. Y no teniendo dicha acreedora hipotecaria interés alguno en la contienda, en oposición a los demandantes, no era parte necesaria en el pleito, ni podía ser constituída en demandada. Véase el artículo 63, Código de Enjuiciamiento Civil.

El contrato de 29 de agosto de 1932 se hizo con el propósito, entre otros, de evitar la ejecución de la hipoteca de la Sra. Woods, prorrogándola por cuatro años, mediante el pago de los intereses pendientes hasta la fecha del contrato, los que convino pagar el demandado con la parte del precio de compra, que retenía en su poder para ese fin. El incumplimiento del contrato por parte del demandado dejó a la señora Woods en libertad para proceder a la ejecución de la hipoteca. La Sra. Woods no fué la causante de los

daños sufridos por los demandantes. Ella no hizo más que ejercitar su derecho como acreedora hipotecaria. Fué el demandado, al negarse a cumplir su compromiso, quien causó el daño cuya reparación ha ordenado la corte sentenciadora.

No erró la corte inferior al sostener que la señora Woods no era parte necesaria en el pleito.

■■ 2do. *Que la Corte inferior erró al declarar que en 29 de agosto \de 1932, fecha del contrato, los demandantes eran dueños de la finca.*

De acuerdo con los términos del contrato entre las partes, el demandado compró la casa y tres cuerdas de terreno de la finca en cuestión, reconociendo al demandante Benítez Flores como dueño de la propiedad.

El testigo Nathaniel Pasarell, hijo de la acreedora hipotecaria Sra. Vda. de Woods, declaró que había hablado con el demandado Llompart con respecto al contrato; que el demandado le dijo que había celebrado el contrato con la firme intención de comprar la finca; que por indicación del demandado habló con el abogado de dicho demandado, Licenciado Dubón, con respecto al otorgamiento de la escritura y que dicho letrado le dijo que ya todo estaba terminado, que los títulos parecían estar en orden y que estaban en espera de firmar la escritura; que convinieron que las escrituras las hiciese el Notario señor Iglesias; que éste preparó la escritura en seguida, pero cuando se la llevaron al demandado Llompart éste se negó a firmarla debido a que la propiedad había sufrido daños causados por el ciclón; que su mamá estaba dispuesta a firmar la escritura porque cobraba intereses atrasados y se pagaban también contribuciones pendientes, todo lo cual se iba a pagar con el dinero efectivo que se comprometió a pagar el Sr. Llompart; que después de negarse el Sr. Llompart a terminar la operación, el declarante se vió obligado a ejecutar la hipoteca, siendo adjudicada la finca a la acreedora hipoteca-

ria; que el declarante informó al demandado de los detalles sobre contribuciones e intereses pendientes y que el demandado estuvo conforme.

El testigo Frank López de la Rosa declaró que la finca del Barrio Monacillo, aunque figuraba a su nombre, era propiedad del demandante Benítez Flores; que intervino en la negociación con el demandado Llompart, pues éste fué a pedirle informes de cómo estaba la finca y el declarante le informó sobre las condiciones en que estaba a su nombre; que el declarante informó al demandado sobre lo que se adeudaba por intereses y contribuciones; que el declarante estuvo dispuesto a firmar y llegó a firmar la escritura a favor de Llompart y que también la firmó la esposa del declarante; que cuando le informó a Llompart sobre lo que se adeudaba por intereses y contribuciones sobre la finca, el demandado le dijo: "Bueno, eso yo lo limpio."

El Dr. Rafael Bernabe declaró que a principios del mes de septiembre, 1932, antes del ciclón, habló con el demandado, a quien dijo: "Chico, te felicito por la compra que has hecho. Has hecho un buen negocio"; que el demandado le dijo: "Sí, yo creo que he hecho un buen negocio."

Declaró el demandante, que al discutir los términos del contrato con el demandado le informó a éste que se veía obligado a vender la finca porque tenía atrasados los intereses sobre la hipoteca; que le informó también que había puesto la finca a nombre del Sr. López de la Rosa para conseguir dinero para saldar los intereses y para pagar las contribuciones atrasadas de la finca, la que se había ejecutado o se estaba ejecutando en aquellos días por la Tesorería en cobro de contribuciones; que el declarante tenía un año para redimir la finca, y que hizo la negociación con el demandado para salvar parte de la finca; que el demandado quedó enterado de todo y convino que del precio estipulado se pagarían por completo intereses y contribuciones pendientes.

La corte inferior no erró al declarar que los demandantes tenían un derecho o interés trasmisible sobre la finca, pues, si bien es cierto que ésta había sido adjudicada al Pueblo de Puerto Rico en pago de contribuciones, no es menos cierto que los demandantes tenían un título en equidad (*equitable title*), que les daba derecho a redimir la finca. El demandado conocía ese hecho y sabía que lo que en realidad estaba él comprando era el derecho a redimir la finca mediante el pago de las contribuciones por las cuales se había hecho la ejecución, más los intereses y costas fijados por la ley.

■ 3ro. *Que el contrato entre las partes no era un contrato de venta* (contract of sale) *y sí un contrato para verificar una compraventa* (contract to sell).

La corte inferior llegó a la conclusión legal de que el contrato objeto de esta acción es un contrato de venta, obligatorio para ambas partes, y que la circunstancia de no haberse firmado la escritura el mismo día del otorgamiento del contrato en nada desvirtúa la fuerza obligatoria del convenio entre las partes. Estamos de acuerdo con esa interpretación.

■ Las dos cuestiones que debemos considerar y resolver son:

1ª. ¿Cuándo se transfiere al comprador el dominio sobre la cosa: al tiempo de perfeccionarse el contrato, o al tiempo de consumarse la venta?

2ª. ¿A quién deberá imputarse la pérdida de la cosa, ocurrida entre el perfeccionamiento del contrato y su consumación?

Los artículos 1334 y 1339 del Código Civil (Ed. 1930), equivalentes al 1445 y 1450 del Código Español, dicen:

"Artículo 1334.—Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente.

"Artículo 1339.—La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado.''

Examinado a la luz de las disposiciones de los citados artículos del Código Civil, no puede caber duda alguna de que el contrato en este caso era un contrato de compraventa. El demandado no se comprometió a comprar, sino que *compró,* una casa y tres cuerdas de terreno por el precio convenido de $8,000, que se comprometió a satisfacer, haciéndose cargo de pagar una hipoteca, sus intereses y contribuciones pendientes y ofreciendo hacer efectivo el balance al firmarse las escrituras. Sobre este punto dice Manresa:

"La sentencia de 8 de marzo de 1901 dice que este contrato, como consensual que es, se perfecciona por el consentimiento en el precio y en la cosa y se consuma por la entrega recíproca de uno y otra, transfiriéndose al comprador el pleno dominio de la cosa vendida, desde cuyo momento cabe ejercitar las acciones que de este derecho se derivan; . . . .'' Manresa, Tomo X (4a. ed) pág. 12.

Véase: Scaevola, Tomo XXIII, pág. 317.

Es indudable que el pleno dominio de la cosa vendida no se transfiere al comprador hasta que el contrato se haya consumado por la entrega recíproca del precio y de la cosa. Art. 549 del Código Civil (1930).

Veamos ahora, sobre quién debe recaer la pérdida de la cosa vendida o los daños sufridos por ésta, después de perfeccionado el contrato y antes de su consumación.

Debemos aceptar como hechos probados e indiscutibles que el contrato en este caso quedó perfeccionado al suscribir las partes el documento en que se basa la demanda; y que los daños sufridos por la cosa vendida fueron causados con posterioridad al perfeccionamiento del contrato, pero antes de que éste fuere consumado. ¿Quién debe, pues, sufrir la pérdida o daño de la cosa vendida?

Nuestro Código Civil (Ed. 1930), en su artículo 1341, equivalente al 1452 del Código Civil español, dice:

"Artículo 1341.—El daño o provecho de la cosa vendida después de perfeccionado el contrato, se regulará por lo dispuesto en los artículos 1049 y 1136.

".         .         .         .         .         .         .         .   ."

Los artículos 1049 y 1136 del mismo Código, dicen:

"Artículo 1049.—Cuando lo que deba entregarse sea una cosa determinada, el acreedor, independientemente del derecho que le otorga el artículo 955, puede compeler al deudor a que realice la entrega.

"Si la cosa fuere indeterminada o genérica, podrá pedir que se cumpla la obligación a expensas del deudor.

"Si el obligado se constituye en mora, o se halla comprometido a entregar una misma cosa a dos o más personas diversas, serán de su cuenta los casos fortuitos hasta que se realice la entrega.

".         .         .         .         .         .         .         ."

"Artículo 1136.—Quedará extinguida la obligación que consista en entregar una cosa determinada, cuando ésta se perdiere o destruyere sin culpa del deudor y antes de haberse éste constituído en mora."

En sus Comentarios sobre el artículo 1452 del Código Español, dice Scaevola a las págs. 340 et seq. del tomo 23, lo siguiente:

"Es decir, si sólo al deudor (vendedor en este supuesto) se le atribuye la responsabilidad por casos fortuitos en las dos contingencias previstas en el artículo 1096 (morosidad o compromiso de entregar dicha cosa a dos o más personas diversas) y cuando haya habido culpa por su parte en la pérdida de aquélla (previsión del art. 1182), *en los demás supuestos, el daño o provecho de la cosa vendida, después de perfeccionada la compraventa y antes de su consumación, corresponderá al comprador,* al cual, por lo que se ve y deduce, se le imputan, sobre todo en cuanto al expresado daño, las consecuencias de no haber reclamado y obtenido, dentro del plazo pactado o del legal supletorio, la entrega de la cosa que le fué concedida en el contrato, eficaz y obligatorio desde que vendedor y comprador consintieron en la cosa y su precio.

".         .         .         .         .         .         .         ."

"*Por lo expuesto podemos afirmar que si dentro del Código es doctrina legal la de que la transmisión del dominio de la cosa vendida no se opera hasta la consumación del contrato, no se cumple en el caso que examinamos la máxima jurídica 'res perit domino,' puesto que al tenor del artículo comentado el riesgo de la cosa vendida pasa al comprador aun no habiendo tomado posesión de la misma.* Acaso por distanciarse de esta aparente antítesis dispuso el Proyecto de 1851, en su artículo 981, que la entrega de la cosa no era necesaria para la traslación de la propiedad, doctrina concordante con la de varios Códigos extranjeros; *mas la antítesis se resuelve en armonía, considerando que desde el momento en que por el mutuo convenio de comprador y vendedor en la cosa y el precio se perfecciona el contrato, tiene aquél derecho a ella, y debe suponerse que si no entra inmediatamente en su posesión es porque la considera salvaguardada lo mismo que si se hubiere operado la traslación surgiendo el 'ius in re.'*" (Bastardillas nuestras.)

La prueba practicada en el presente caso demuestra claramente que el vendedor no incurrió en mora y que por el contrario fué el comprador quien dilató el otorgamiento de la escritura, negándose más tarde a firmarla por motivo de haber sido perjudicada la propiedad por un ciclón que ocurriera con posterioridad al perfeccionamiento del contrato.

No son demasiado remotos los daños y perjuicios reclamados por el demandante. Esos daños pudieron ser previstos por el demandado, como una consecuencia necesaria e inevitable de su falta de cumplimiento. El demandado Llompart sabía que el demandante tenía necesidad imperiosa de vender la casa y parte de la finca, para evitar la ejecución de la hipoteca a favor de la Sra. Viuda de Woods y para levantar fondos para pagar las contribuciones adeudadas al Tesoro Insular; y sabía también que si se consumaba el contrato en la forma convenida, el demandante quedaría libre de las obligaciones de la finca y además reservaría para sí una porción de algo más de cuatro cuerdas de terreno. El demandado debía presumir que las consecuencias directas e inevitables de su falta de cumplimiento

habrían de ser el dejar a la Sra. Woods en libertad para proceder como procedió a la ejecución de la hipoteca sobre la totalidad de la finca y el privar al demandante del beneficio de la parcela de terreno que se reservaba para sí de acuerdo con el contrato.

No creemos que la suma concedida por la corte inferior como indemnización sea excesiva.

*Debe confirmarse la sentencia apelada.*

Los Jueces Señores Presidente del Toro y Asociado Córdova Dávila no intervinieron.