BRUGAL & Co., C. por A., peticionaria y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 8975.—*Sometido:* Diciembre 19, 1944. *Resuelto:* Mayo 4, 1945.

*Géigel & Silva,* abogados de la apelante; *Hon. Procurador General Interino Jesús A. González* y *F. A. Rodríguez Forteza, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La corporación Borinquen Refining Co. era dueña de una finca rústica de seis cuerdas sita en el barrio Monacillos de Río Piedras. No habiendo pagado las contribuciones correspondientes a los años 1927 al 1931 se inició procedimiento de apremio que culminó en subasta celebrada en 26 de enero de 1932 en la cual se adjudicó el inmueble a El Pueblo de Puerto Rico por la suma de $8,380.42, importe de las contribuciones adeudadas, recargos e intereses. En el año 1934 el Comisionado del Interior arrendó el inmueble a Brugal & Co., C. por A. por un término de quince años y mediante el pago de un canon de $640 anuales. Brugal & Co., C. por A.

es, desde el 11 de octubre de 1943, cesionaria de los derechos y acciones pertenecientes a la Borinquen Refining Co. y de los pertenecientes al Banco Comercial de Puerto Rico como acreedor hipotecario con gravamen inscrito sobre la finca por la suma de $60,000.

Basándose en los anteriores hechos y en lo dispuesto en el artículo 348 del Código Político, según fué enmendado por la Ley número 11 aprobada en 10 de abril de 1943 (pág. 33), Brugal & Co. solicitó, tanto del Tesorero de Puerto Rico como de sus subalternos, la redención de la finca en su carácter de cesionaria de los derechos y acciones de Borinquen Refining Co. y del Banco Comercial de Puerto Rico y al efecto consignó con el Colector de Corporaciones del Departamento de Hacienda un cheque certificado por la suma de $17,294.65 suma que representa la liquidación hecha por Brugal & Co. de lo adeudado al fisco por el importe de las contribuciones sobre la finca desde la fecha de la subasta hasta diciembre 31, 1943, con más intereses al 6 por ciento anual, recargos, etc., no habiendo sido aceptado dicho cheque por el Tesorero quien informó a Brugal & Co. que el mismo estaba a su disposición hasta tanto se resolviera si procedía o no la redención solicitada.

No habiendo el Tesorero de Puerto Rico resuelto nada en cuanto a la redención solicitada, Brugal & Co. radicó una petición en la Corte de Distrito de San Juan solicitando se expidiese un auto de *mandamus* contra dicho funcionario ordenándole que proceda a acceder a la redención de la finca a favor de la peticionaria, y a aceptar el depósito efectuado. El caso fué sometido a virtud de una estipulación sobre los hechos y limitándose las cuestiones en controversia a dos, a saber:

"(a) Que el demandado alega que la peticionaria no tiene derecho a la redención solicitada porque la cesión que a su favor hicieran la Borinquen Refining Co. y el Banco Comercial de Puerto Rico fué efectuada en 11 de octubre de 1943, o sea, 11 años después de la fecha

del certificado de compra de la finca en litigio a favor del Pueblo de Puerto Rico, entendiendo el demandado que las únicas personas con derecho a redimir bajo las disposiciones de la Ley núm. 11 de abril 10 de 1943 son aquellas personas con derecho a redimirla dentro del año de la fecha del certificado de venta; entendiendo y alegando en contrario la peticionaria el tener derecho a la redención por ser cesionaria de la dueña de dicho inmueble a la fecha de la subasta y dentro del año de la emisión del certificado de venta, o sea, Borinquen Refining Co., y, del acreedor hipotecario sobre dicho inmueble a la fecha de la subasta y dentro del año de emisión de dicho certificado de venta, o sea, el Banco Comercial de Puerto Rico.

"(b) Que el demandado alega que la peticionaria no tiene derecho a la redención solicitada por entender que la finca objeto del litigio está siendo utilizada por El Pueblo de Puerto Rico por razón de estar la misma arrendada a la propia peticionaria que paga por ello al Gobierno de Puerto Rico los cánones correspondientes; entendiendo y alegando en contrario la peticionaria que el contrato de arrendamiento sobre dicha propiedad no significa que la propiedad esté siendo utilizada por El Pueblo de Puerto Rico, y además que la consecuencia única de la redención de la finca a favor de la peticionaria sería que ésta vendría obligada a respetar el contrato de arrendamiento del Pueblo de Puerto Rico con la misma peticionaria, alegando afirmativamente la peticionaria en esta estipulación que está dispuesta a renunciar a todos los derechos y acciones que tenga en el mencionado contrato de arrendamiento con El Pueblo de Puerto Rico de accederse a la redención de la finca, por confundirse entonces en la peticionaria el carácter de dueña y arrendataria del inmueble.''

La corte inferior declaró sin lugar la petición de mandamus resolviendo las dos cuestiones planteadas a favor del demandado. La peticionaria apeló.

El artículo 348 del Código Político, según quedó enmendado por la Ley número 11 de abril 10 de 1943 dispone, en lo pertinente, que:

"El que fuere dueño en la fecha de la venta de cualesquiera bienes inmuebles, que en lo sucesivo se vendieren a otra persona natural o jurídica o a El Pueblo de Puerto Rico para el pago de contribuciones, sus herederos o cesionarios, o cualquier persona que en la fecha de la venta tuviere algún derecho o interés en los mismos, o sus herederos o cesionarios, podrá redimirlos dentro

del término de un (1) año contado desde la fecha de la emisión del certificado de compra pagando al Colector de Rentas Internas en cuya colecturía se hubiese verificado la venta de la propiedad o al comprador, herederos, o cesionarios, la cantidad total del valor de la compra, con interés a razón de seis (6) por ciento anual desde la fecha de la venta, junto con todas las costas devengadas y contribuciones vencidas hasta la fecha de la redención. . . . Cuando la propiedad haya sido adjudicada a El Pueblo de Puerto Rico, el Tesorero deberá, después de transcurrido un año desde la fecha de la emisión del certificado de venta, acceder a la redención de la misma por cualquier persona con derecho a redimirla dentro del año, siempre que al solicitarse la redención la propiedad no esté siendo utilizada por El Pueblo de Puerto Rico y o no haya sido vendida o traspasada por éste, que la persona que solicite la redención deposite previamente en la colecturía de rentas internas correspondiente la cantidad por la cual se adjudicó la finca a El Pueblo de Puerto Rico, con intereses a razón del seis (6) por ciento anual desde la fecha de la venta, junto con todas las costas devengadas y las contribuciones que se habrían impuesto sobre dicha propiedad de haber continuado la misma en poder de cualquier contribuyente, con sus recargos e intereses; *Disponiéndose,* que en estos casos, una vez que el Tesorero haya accedido a la redención, se expedirá el certificado de redención y se cancelará la venta en el Registro de la Propiedad en la misma forma que se prescribe en este artículo para los casos de redención dentro del año.''

Un examen cuidadoso de este artículo demuestra que el mismo abarca dos situaciones, a saber: 1, que pueden redimir dentro del año de emitido el certificado, el que fuere dueño del inmueble a la fecha de la venta a cualquier persona natural o jurídica o a El Pueblo de Puerto Rico, los herederos o cesionarios del dueño o cualquier persona que en la fecha de la venta tuviesen algún derecho o interés en el mismo o los herederos o cesionarios de dicha persona, y 2, que se concede el mismo derecho de redención a las mismas personas cuando ha transcurrido más de un año desde la fecha de la emisión del certificado y el inmueble ha sido adjudicado a El Pueblo de Puerto Rico.[1]

(1)La Ley número 11 de 1943 al enmendar el artículo 348 del Código Político tuvo el efecto de codificar en forma permanente lo que casi corrientemente venía haciendo la Legislatura al conceder prórrogas de un año para redimir

A nuestro juicio erró la corte inferior al resolver que "solamente tienen derecho a redimir, después de haber transcurrido el año de redención, aquella o aquellas personas quienes tenían algún derecho o interés sobre el o los inmuebles subastados el día de la venta o dentro del año." Esta interpretación excluye del derecho de redención a aquellas personas naturales o jurídicas que hubieren heredado o fueren cesionarias del dueño después de transcurrido un año de efectuada la venta. Tanto las leyes que hemos citado al margen como la Ley número 11 de 1943 lo que hacen es extender el derecho de redención, cuando ha transcurrido más de un año de la venta y adjudicación a El Pueblo de Puerto Rico, a las mismas personas que podrían redimirla dentro del año.[2] Que el propio demandado le dió esta interpretación se desprende de la carta circular número 49 que le dirigió a los Colectores de Rentas Internas el 15 de diciembre de 1943 (*Exhibit* B del demandado) en la cual, al explicarles el alcance de la Ley número 11 de 1943, les decía:

"Existen dos clases de redenciones, de acuerdo con la ley; la redención dentro del año de haberse expedido el certificado de compra, y la redención después de transcurrido este período.

"Las personas que pueden redimir son las mismas en ambos casos. En todo caso tienen derecho a redimir las siguientes personas:

"1—el que era dueño de la propiedad a la fecha de la subasta;

aquellas propiedades que habían sido adjudicadas a El Pueblo de Puerto Rico. Véanse al efecto las siguientes leyes: Número 3, aprobada en 2 de abril de 1932 (Leyes de 1931–32, pág. 173); 23, aprobada en 15 de abril de 1935 ((1) pág. 187); 121, aprobada en 13 de mayo de 1937 (Leyes de 1936–37, pág. 284); 81, aprobada en 6 de mayo de 1938 (pág. 201); 85, aprobada en 29 de abril de 1940 (pág. 579); y 17, aprobada en 9 de abril de 1941 ((1) pág. 357).

(2) Un ejemplo de que esto fué siempre la intención legislativa nos la da la sección 2 de la Ley número 17 de 9 de abril de 1941 ((1) pág. 357) que disponía lo siguiente:

"Sección 2.—Cualquier heredero o cesionario de la persona a cuyo nombre fué rematada la propiedad, o cualquier persona que tenía algún derecho o interés en la propiedad subastada al ser ésta adjudicada a El Pueblo de Puerto Rico, tendrá el derecho a redención determinado en la sección primera de esta Ley."

"2—los herederos del que era dueño de la propiedad a la fecha de la subasta;

"3—el cesionario del que era dueño de la propiedad a la fecha de la subasta, o sea, aquél a quien el que era dueño a la fecha de la subasta le haya cedido su derecho;

"4—los herederos de los cesionarios mencionados en el número que antecede;

"5—cualquier persona que en la fecha de la subasta tuviere algún derecho o interés en los bienes; pero no puede ser un interés o derecho remoto o futuro, sino que tal derecho o interés debe ser real y tenía que existir ya a la fecha de la subasta;

"6—los herederos de la persona que a la fecha de la subasta tuviera algún derecho o interés en la propiedad;

"7—el cesionario del que a la fecha de la subasta tuviere algún derecho o interés en la propiedad;

"8—los herederos de los cesionarios mencionados en el número 7 que antecede."

En el caso de *Puerto Rico Ilustrado* v. *Buscaglia, infra,* pág. 914, ratificamos jurisprudencia anterior nuestra, con cita de otras autoridades, en cuanto al alcance que deben dar las cortes, como guía interpretativa de un estatuto, a los reglamentos aprobados por el Tesorero en relación con una ley contributiva cuando dichos reglamentos han estado en vigor por largo tiempo. En el presente caso es cierto que la carta circular del Tesorero estableciendo la forma en que los Colectores de Rentas Internas debían interpretar la Ley número 11 de 1943 fué enviada pocos meses después de la aprobación de la ley, empero este hecho no milita en contra de su consideración judicial. Por el contrario, en 3 Sutherland, *Statutory Construction* 310, (3ra Ed.), se dice "Sin embargo, a tales reglamentos se les da gran peso por las cortes al resolver significados dudosos en las leyes contributivas, y esto es especialmente cierto *cuando dichos reglamentos han sido formulados contemporáneamente a la aprobación del estatuto* y han estado en vigor largo tiempo." (Bastardillas nuestras.) En la nota a la frase en bastardillas se cita el caso de *Norwegian Nitrogen Products Co.* v.

*United States*, 288 U. S. 294, 77 L. Ed. 796, (1933), en el cual a la pág. 315 se discute por el Juez Cardozo el alcance que debe darse a la práctica administrativa interpretando una ley contributiva y termina diciendo: "La práctica tiene un peso peculiar cuando envuelve una interpretación contemporánea de un estatuto por los hombres que tienen la responsabilidad de poner en movimiento su maquinaria, de hacer que sus partes trabajen eficientemente y sin dificultad cuando aún no han sido probadas y son nuevas."

Bajo los apartados 3 y 7, supra, no hay duda alguna de que Brugal & Co., como cesionaria de Borinquen Refining Co. y del Banco Comercial, que eran dueños y acreedor hipotecario, respectivamente, a la fecha de la subasta, tenía derecho a redimir la propiedad. Si de acuerdo con la Ley núm. 11 de 1943 la Borinquen Refining Co. o el Banco tenían ese derecho, al vender o ceder sus derechos y acciones, vendieron o cedieron ese derecho a Brugal & Co. Así lo resolvimos en el caso de *Benítez Flores* v. *Llompart,* 50 D. P.R. 670; "Adjudicada una propiedad al Pueblo de Puerto Rico en pago de contribuciones, el contribuyente tiene un derecho o interés transmisible sobre la finca—título en equidad (*equitable title*) que le da derecho a redimirla. Tal derecho de redención es el que él puede transmitir y en realidad transmite a uno que le compra la propiedad sabiendo de la adjudicación al Pueblo." (Sumario 4.)

Erró la corte inferior al resolver la primera cuestión planteada bajo la letra (*a*) de la estipulación, supra, pues nada encontramos en la ley que exija que la venta o cesión de los derechos y acciones de aquel que podía redimir dentro del año de efectuada la venta tenga que verificarse dentro de ese mismo período de tiempo para que el comprador o cesionario pueda adquirir el derecho a redimir la propiedad.

Pasamos a considerar la segunda cuestión planteada.

El artículo 348, supra, establece que la propiedad rematada podrá redimirse "siempre que al solicitarse la re-

dención la propiedad no esté siendo utilizada por El Pueblo de Puerto Rico y o no haya sido vendida o traspasada por éste . . . '' La corte inferior resolvió que no procedía la redención en este caso porque la propiedad había sido arrendada a la aquí peticionaria por un término de quince años a un canon de $640 anuales y que, como consecuencia El Pueblo de Puerto Rico está recibiendo provecho o beneficio de la propiedad. Fundamentó su decisión en la definición que da el Diccionario de las palabras ''utilizar'' y ''útil'' al efecto de que significan ''aprovecharse de una cosa'' y ''que trae o produce provecho, comodidad, fruto o interés'', respectivamente.

Aun cuando la definición específica de una palabra usada en una ley puede servir de guía para determinar la intención legislativa al aprobarla hay casos en los cuales la naturaleza de la ley en su totalidad y el proceso legislativo a través de los años cuando ha sido objeto de distintas enmiendas es lo que debemos considerar para fijar con exactitud dicha intención.

Examinando las leyes que hemos citado en la nota (1) encontramos que en la Ley núm. 3 de 1932 la excepción se expresó en esta forma en la sección 1ª: '' . . . siempre que tales bienes inmuebles así vendidos hubieren sido adjudicados en el remate al Pueblo de Puerto Rico, no hubieren sido traspasados a terceras personas, o no se estuvieren dedicando a servicios del Gobierno Insular o de los municipios.''

En la Ley núm. 23 de 1935 se varió el lenguaje en esta forma: '' . . . siempre que tales propiedades hubieren sido adjudicadas a El Pueblo de Puerto Rico y estén en su posesión y no estuvieren dedicadas a servicios del Gobierno Federal o Insular o de los municipios.'' El propósito obvio fué incluir al Gobierno Federal además del Insular y el de los municipios. En esta misma forma se conservó el texto en las Leyes números 121 de 1937, 81 de 1938, 85 de 1940 y 17 de 1941. Al aprobarse la Ley número 11 de 1943, su-

pra, como hemos visto, se varió la fraseología de nuevo, eliminándose toda mención del Gobierno Federal y el de los municipios al sustituirse la frase "y no estuvieren dedicados a servicios del Gobierno Federal o Insular o de los municipios" por la que dice "Siempre que . . . la propiedad no esté siendo utilizada por El Pueblo de Puerto Rico . . ."

La variación en la fraseología usada en estas leyes nos parece más bien de forma que de fondo.

La idea dominante es que la propiedad al momento de ser redimida no esté siendo utilizada o dedicada a servicios del Gobierno, no en el concepto económico[3] que pueden tener las palabras utilizar o servicios, sino en el sentido de que esté siendo usada por El Pueblo de Puerto Rico para fines de carácter gubernamental.

Es cierto que la palabra "útil" significa algo que produce provecho, fruto o interés. Sin embargo esta acepción puede estar limitada al campo del derecho civil según vemos en la Enciclopedia Jurídica Española, Tomo 30, pág. 677, donde se dice que: "El término útil que jurídicamente se refiere y debe referirse al Derecho civil, *porque el Derecho administrativo toma por norma la utilidad pública, como equivalente a provecho,* es una noción variable según los deseos; según la posición subjetiva y objetiva en un caso y momento determinados. . . ." (Bastardillas nuestras.)

Como consecuencia, si dentro del Derecho administrativo en relación con los términos utilizar o útil debe prevalecer la norma de utilidad pública como equivalente a provecho, forzoso es concluir que la interpretación que damos a los mismos encarna la intención legislativa, expresada en distinta forma a través de las leyes citadas, de que para que exista el impedimento a la redención la propiedad debe estar siendo utilizada o dedicada a algún servicio de utilidad

---

[3] Véase el alcance que hemos dado a la palabra "use" en relación con la Ley de Rentas Internas en el caso de *Puerto Rico Ilustrado* v. *Buscaglia*, pág. 914, *infra.*

pública del Gobierno y que el hecho de que exista un contrato de arrendamiento con la propia entidad que tiene el derecho a redimir no es un impedimento legal a la redención.

Tomando en consideración que la finalidad de las leyes que conceden el derecho a redimir propiedades subastadas por no haberse pagado las contribuciones a ellas impuestas es el obtener el cobro de dichas contribuciones, se ha sostenido que estas leyes deben interpretarse liberalmente a favor de la persona o entidad a quien se concede el derecho de redención. 4 Cooley *on Taxation* 3064, Sec. 1558. Esta siempre ha sido la norma interpretativa en estos casos y así vemos que en el de *Corbett* v. *Nutt,* 10 Wall. (77 U. S.) 464 (1870) el Tribunal Supremo Nacional expuso la regla general, adoptada por la jurisprudencia, en esta forma: "Es la regla general de las cortes dar a los estatutos que autorizan la redención de propiedades subastadas (tax sales) una interpretación favorable a los dueños, especialmente cuando proveen, como en el presente caso, indemnización completa al comprador e imponen una penalidad al contribuyente moroso."

De acuerdo con esta doctrina cualquier duda que pudiera haber en cuanto a la cuestión que discutimos, debemos resolverla, interpretando liberalmente el estatuto a favor del contribuyente o su cesionario ya que El Pueblo de Puerto Rico no sufre perjuicio alguno al resarcirse en la totalidad de las contribuciones adeudadas, sus intereses y penalidades. Erró, también, por tanto, la corte inferior al resolver la segunda cuestión planteada.

*Siendo ésta la conclusión a que hemos llegado, procede la revocación de la sentencia y dictarse otra ordenando al demandado que proceda a acceder a la redención solicitada por la peticionaria previo el pago de la suma por la cual se adjudicó la finca a El Pueblo de Puerto Rico, con más sus intereses y recargos, y de las contribuciones que se hubieren impuesto sobre el inmueble de haber continuado el mismo en poder de la contribuyente, con más sus intereses y recargos.*