RELIABLE FINANCIAL SERVICES, INC.
Demandante-Apelante

v.

MUNICIPIO DE SAN JUAN
Demandado-Apelado

Núm. KLAN-95-00122

San Juan, Puerto Rico, a 12 de junio de 1995

Panel integrado por su presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Urgell Cuebas, Juez Ponente.

## TEXTO COMPLETO DE LA SENTENCIA

Se nos solicita en este caso que revisemos una Sentencia Sumaria dictada el 6 de diciembre de 1994 por el Tribunal Superior, Sala de San Juan. En la misma se determinó que las operaciones comerciales que realiza la apelante, Reliable Financial Services, Inc., (de ahora en adelante denominada *"Reliable"*), de otorgar contratos de venta condicional para luego venderlos a un banco y brindar los servicios de administrarlos, entre otros, constituye un *"negocio financiero"* bajo las disposiciones de la Sec. 2(a) (6) de la Ley de Patentes Municipales, 21 L.P.R.A. Sec. 651(a) (6). A tenor con ello, Reliable estaría sujeta al pago de la patente municipal a razón de la tasa impositiva del uno por ciento (1%) sobre el volumen de negocios a favor del Municipio de San Juan.

En su escrito de apelación, Réliable hace los siguientes señalamientos: (1) que no procedía dictar sentencia sumaria en su contra toda vez que no se habían completado los procedimientos de descubrimiento de prueba en el caso; (2) que erró el Tribunal Superior, al determinar que se trataba de un *"negocio financiero";* (3) que la imposición de la patente conlleva una doble tributación al fijar la misma tasa contributiva al mismo volumen de negocio que surge de idéntica actividad económica; (4) que erró el Tribunal Superior al resolver que el resultado de una investigación previa, donde se había determinado que Reliable no se dedicaba a un negocio financiero, no constituye una práctica administrativa que impida al Municipio revocar retroactivamente dicha determinación; (5) que el Municipio está impedido de cobrar las patentes objeto del litigio basado en la doctrina de actos propios, *"estoppel";* y (6) finalmente, que erró el Tribunal Superior al permitir que se aplicase retroactivamente la determinación del Municipio, lo que la privaría de su propiedad sin el debido procedimiento de ley.

Analizados los señalamientos de la apelante, así como la Sentencia Sumaria dictada por el ilustrado juez de instancia, procede que confirmemos la misma. Veamos.

### I

Los hechos materiales y esenciales a los fines de resolver este caso, no están en controversia.

Reliable es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto

Rico, con oficinas principales en el Municipio de San Juan. Esta proporciona financiamiento a los vendedores (dealers) de vehículos de motor para la compra de éstos. Además provee ciertos servicios a algunas instituciones bancarias, lo que envuelve el otorgamiento, cesión y administración de contratos de ventas al por menor a plazos relacionados con la compra de los vehículos de motor.

Para llevar a cabo las actividades comerciales antes indicadas, Reliable otorgó un contrato con los vendedores (dealers) de vehículos denominado *"Floor Plan"*. Bajo este contrato Reliable adelanta fondos a los vendedores (dealers) para la adquisición de los vehículos y éstos a su vez ofrecen los mismos en garantía.

Cuando una persona particular compra un vehículo, el vendedor (dealer) le ofrece financiamiento por medio de un contrato de venta al por menor a plazo (contrato de venta condicional). Dicho contrato contiene unas disposiciones que requieren al vendedor (dealer) ceder el contrato a Reliable. Una vez Reliable adviene dueña del contrato no lo conserva para sí, sino que en virtud de otro contrato denominado *"Warehousing Agreement"*, entre ella y las instituciones bancarias, vende el mismo a estas últimas. Una vez esto ocurre, comienza a operar otro contrato entre dichas partes (Reliable y las instituciones bancarias) llamado *"Servicing Agreement"*, ■ mediante el cual Reliable se obliga a administrarles la cartera de los préstamos de los contratos vendidos, recibiendo una compensación estipulada.

Tomando como base el anterior esquema, Reliable genera ingresos por concepto de: (1) financiamiento a los vendedores (dealers) de los vehículos de motor; (2) por el pago de servicios rendidos en la administración de los préstamos a las instituciones bancarias.

En 23 de noviembre de 1993 el Municipio de San Juan le cursó a Reliable una notificación preliminar de deficiencias por concepto de patentes municipales para los años contributivos 1990-91, 1991-92, 1992-93, 1993-94, por la suma de $165,176.73. Las deficiencias surgen de la determinación del Municipio de que las operaciones comerciales de Reliable caen bajo la clasificación de "negocio financiero" y por ende sujeto al uno por ciento (1%) de la tasa contributiva sobre el volumen de negocio declarado. Esta tasa es mayor a la que se le impone a los negocios no financieros.

Luego de haber agotado los procedimientos administrativos, Reliable recurrió en alzada ante el Tribunal Superior, Sala de San Juan, impugnando la determinación contributiva. Después del Municipio haber contestado la demanda, ambas partes presentaron mociones de sentencias sumarias a su favor. El tribunal declaró con lugar la solicitud de sentencia sumaria presentada por el Municipio de San Juan y determinó que procedían las deficiencias sobre las patentes municipales impuestas para todos los años contributivos señalados, excepto la correspondiente al año 1990-91, la cual concluyó que estaba prescrita.

## II

En el primer error señala Reliable que el Tribunal Superior no debió haber dictado sentencia sumaria, cuando no se había completado el procedimiento de descubrimiento de prueba en el caso. Arguye ésta, que a través del mismo interesaba establecer unos hechos que constituyen una práctica administrativa del Municipio, contraria a la que ahora afirma. Se refiere Reliable a que en una notificación de deficiencia contributiva para el año fiscal 1987-88, el Municipio había determinado que ésta no se dedicaba a actividades financieras.

En primer lugar examinaremos si como cuestión procesal, incidió el Tribunal Superior al dictar sentencia sumaria en el caso cuando no se había concluído el procedimiento de descubrimiento de prueba y luego veremos si en realidad se perjudicó Reliable por ello.

Surge de los documentos sometidos por las partes ante nuestra consideración, que el 12 de

julio de 1994 Reliable notificó al Municipio un pliego de interrogatorios. Este fue contestado el 14 de octubre de dicho año. El 4 de noviembre de 1994 Reliable objetó algunas de las contestaciones al interrogatorio. El 8 de noviembre de 1994 el Tribunal Superior ordenó a los abogados de las partes para que se reunieran con el propósito de solucionar las diferencias surgidas entre éstas. Según nos informa Reliable, los abogados se reunieron y acordaron que el 30 de noviembre de 1994 el Municipio sometería una contestación suplementaria al interrogatorio. Específicamente, señala Reliable que el Tribunal Superior dictó Sentencia Sumaria antes de que ella recibiese la contestación suplementaria, con la cual pretendia establecer la llamada *"práctica administrativa"*.

Como marco de referencia y para poder adjudicar en su correcta perspectiva el planteamiento de Reliable, tenemos que tener presente que la solicitud de sentencia sumaria del Municipio fue presentada ante el Tribunal Superior el 18 de octubre de 1994. Se acompañó a ésta una declaración jurada del señor Francisco López Vega, Director Asociado del Programa de Patentes Municipales del Municipio de San Juan, quien dió fe de la veracidad de los hechos contenidos en la moción. Reliable se opuso el 10 de noviembre de 1994 a la solicitud de sentencia sumaria y a su vez solicitó que se dictase sentencia sumaria a su favor. Es significativo señalar que Reliable no solicitó o planteó al Tribunal Superior la necesidad de contar con la contestación suplementaria al interrogatorio o cualquier otra evidencia, para poder oponerse a la solicitud de sentencia sumaria del Municipio.

La Regla 36.6 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.6, provee un mecanismo procesal para cuando una parte no puede presentar mediante declaraciones juradas hechos esenciales para sostener su oposición. En estas circunstancias, y a solicitud de parte, el tribunal puede proveer distintos remedios, entre éstos, suspender la vista para que se obtengan las declaraciones, ordenar a la otra parte para que facilite cierta evidencia, así como dictar cualquier otra orden que sea justa. Como hemos visto, Reliable no hizo el planteamiento al tribunal y descansó totalmente en la oposición que presentó. El Tribunal Superior no erró al dictar Sentencia Sumaria, aún cuando estuviese pendiente la contestación suplementaria.

Ahora bien, aparte de lo antes expresado, aún en el supuesto de que lo que pretendía Reliable era establecer por medio de la contestación suplementaria al interrogatorio que en el año fiscal 1987-88 el Municipio había determinado que no se dedicaba a actividad financiera, el Tribunal Superior tomó en consideración como cierto este hecho al dictar su sentencia. Esto es, que en nada se afectó Reliable por el hecho de no contar con la contestación suplementaria al interrogatorio.

Reiteradamente se ha resuelto que un tribunal puede dictar sentencia sumaria en favor de una parte si de los autos y los documentos presentados en apoyo y oposición surge que no existe controversia en cuanto a los hechos esenciales y que, como cuestión de derecho, procede que se dicte la misma. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. R. 36.3, Ap. III; *M.J.C.A, Menor v. J.L.E.M. Menor,* 124 D.P.R. 910 (1989). En el caso de autos no existe controversia sobre los hechos esenciales, por lo que estuvo correcto el Tribunal Superior al dictar Sentencia Sumaria a favor del Municipio.

### III

Examinaremos ahora el segundo error planteado sobre la aplicación a Reliable de la definición de *"negocio financiero",* Sec. 2(a) (6) de la Ley de Patentes Municipales, *supra.* Según mencionamos anteriormente, el negocio de Reliable puede ser dividido en dos actividades. La parte que se relaciona con el financiamiento a los vendedores (dealers), con el propósito de generar los préstamos que administra, la cual representa, según ésta, el veinte por ciento (20%) del volumen de su negocio, y la otra, que es la principal, sobre la administración de la cartera de préstamos de los vehículos de motor para las entidades bancarias.

Específicamente aduce Reliable que los servicios ofrecidos bajo el denominado *"Servicing Agreement"*, no constituyen *"negocio financiero"*, según se define en la Sec. 2(a) (6) de la Ley de Patentes Municipales, *supra.*

La Ley de Patentes Municipales de 1974, Ley Núm. 113 del 10 de junio de 1974, en su inciso (a)(5), 21 L.P.R.A. 651 (a)(5), contenía la siguiente definición de *"negocio financiero":*

*"Toda industria o negocio consistente en servicios y transacciones de bancos comerciales, asociaciones de ahorro y préstamos, bancos mutualistas o de ahorros, compañías de financiamiento, compañías de seguro, compañías de inversión, agencias de cobro y de cualquier actividad financiera llevada a cabo por cualquier industria o negocio."*

En el año 1991, el inciso (a)(5), *supra*, fue enmendado a los fines de incluir a las *"casas de corretaje"* y añadir la frase *"de naturaleza similar".* En el 1992, se renumeró dicho inciso como (a)(6), 21 L.P.R.A. 651 (a)(6). Este dispone como sigue:

*"toda industria o negocio consistente en servicios y transacciones de bancos comerciales, asociaciones de ahorro y préstamos, bancos mutualistas o de ahorros, compañías de financiamiento, compañías de seguro, compañías de inversión, casas de corretaje, agencias de cobro y **cualquier otra actividad de naturaleza similar llevada a cabo por cualquier industria o negocio**. El término "negocio financiero" no incluirá actividades relacionadas con la inversión por una persona de sus propios fondos, cuando dicha inversión no constituya la actividad principal del negocio."* (Énfasis suplido.)

Al interpretar y aplicar a los hechos particulares de este caso, las disposiciones de ley antes transcritas, debemos tener en cuenta que el propósito del legislador al conceder a los municipios la facultad del cobro de patentes, lo hizo en la *"forma más amplia y no puede dársele una interpretación restrictiva." Banco Popular v. Municipio de Mayaguez,* **90 JTS 99**, a la página 7920.

La Asamblea Legislativa ha conferido a los municipios el poder de imponer patentes municipales a las industrias o negocios no exentos. De hecho, la Ley de Patentes Municipales amplió la facultad impositiva de los municipios al eliminar *"la clasificación de negocios en grupos específicamente enumerados y se impuso patentes sobre la prestación de servicios, ventas al detal o al por mayor, negocios financieros y a otras empresas no exentas." The Chase Manhattan Bank v. Municipio de San Juan,* 126 D.P.R. ___, **90 JTS 110**, a la página 7980. En este caso, el tribunal, luego de analizar el historial legislativo de la ley, concluye que el propósito de ésta fue *"ampliar las actividades comerciales e industriales sujetas a la imposición de patentes."* Al así concluir, determinó que la actividad del banco de servir y administrar hipotecas de tercero constituye una transacción bancaria *e ipso jure* un negocio financiero sujeto al pago de patentes municipales.

En *American Express Co. v. Municipio de San Juan,* 120 D.P.R. 339, 349 (1988), el Tribunal Supremo interpretó el alcance de la definición de *"negocio financiero"* de la Ley de Patentes Municipales. Expresa la Opinión que la ley *"autorizó a los municipios a cobrar patentes a cualquier otra empresa dedicada a una actividad financiera. Dichas actividades pueden ser iguales a las realizadas por las entidades financieras **o pueden incluir otra operación de naturaleza financiera."** (subrayado nuestro.) En este caso se resolvió que el negocio de tarjetas de American Express Company constituye una actividad financiera sujeta al pago de patentes municipales. American Express participaba en un complejo y sofisticado esquema mediante el cual se beneficiaba como resultado de la venta de los recibos de cobro de las tarjetas y de las sumas que recibía por encargarse de la facturación y cobro de los mismos.

El Tribunal Supremo ha sido consistente al expresar que la *"Ley [de patentes municipales] no limita la aplicación de la patente a las empresas específicamente identificadas. Todo lo contrario, al extender la patente a cualquier otra actividad financiera la legislatura delegó a los municipios el poder de cobrar este impuesto a empresas destinadas a actividades financieras. También se autorizó a los municipios a cobrar patentes a cualquier otra empresa dedicada a una actividad financiera. Dichas actividades pueden ser iguales a las realizadas por las entidades enumeradas o pueden incluir otra operación de naturaleza financiera."* (Subrayado nuestro), *The Chase Manhatan Bank v. Municipio de San Juan, supra,* 7981.

Examinado el trasfondo doctrinal veamos si la actividad de servicios que brindaba Reliable a las instituciones financieras constituye o no un negocio financiero bajo la Ley de Patentes Municipales. Para ello es indispensable examinar los términos del contrato titulado *"Servicing Agreement".*

No existiendo controversia sobre el hecho de que la actividad de financiar a los vendedores (dealers), bajo el contrato denominado *"Floor Plan"*, cae bajo la definición de *"negocio financiero"*, analizaremos si los servicios que ofrece Reliable a las instituciones financieras están o no comprendidos dentro de la referida definición.

Según la cláusula número *"4"* del *"Servicing Agreement"*, Reliable ofrece, entre otros, los siguientes servicios a las instituciones bancarias, según transcribimos del Escrito de Apelación de Reliable, pág. 7:

*"(a) Establecer y mantener cuentas separadas para cada contrato de venta al por menor a plazos.*

*(b) Cobrar las sumas que se le deben a los bancos con respecto a cada contrato, según vayan venciendo y depositar la totalidad de los plazos en la cuenta designada por los bancos.*

*(c) Aplicar los pagos a la cuenta correspondiente, reservando el derecho de Reliable a retener los cargos por demora para compensar sus gastos.*

*(d) Llevar a cabo gestiones de cobro y depositar en la cuenta designada por los bancos todo el dinero cobrado.*

*(e) Someter informes a los bancos.*

*(f) Proveer libretas de pago a los deudores y la información sobre intereses pagados.*

*(g) Reposeer vehículos.*

*(h) Procesar reclamaciones bajo pólizas de seguro.*

*(i) Velar que los deudores mantengan los vehículos asegurados y en general, proteger los intereses de los bancos con respecto a los contratos."*

Un estudio del referido contrato de servicio, demuestra que Reliable tiene la obligación de realizar las funciones antes descritas, en cumplimiento con las leyes y reglamentos estatales y federales aplicables. Los términos del acuerdo incluyen el que agencias fiscalizadoras como lo es la Federal Home Loan Bank Board, pueden intervenir en las funciones que Reliable ejecute como parte de sus servicios. Además, tiene que cumplir con el Fair Credit Reporting Act y las regulaciones promulgadas por la Federal Home Loan Bank Board en relación con los servicios de los préstamos. En adición, para los efectos de la Ley Núm. 68, del 19 de junio de 1964, conocida como Ley de Ventas a Plazos y Compañías de Financiamiento, 10

L.P.R.A. Sec. 731, *et seq.*, se considera una compañía de financiamiento, por su condición de adquirir contratos de venta al por menor a plazos de los vendedores de autos.

En el caso ante nosotros, Reliable se beneficia económicamente de los servicios de financiamiento que provee a los vendedores de los vehículos *("dealers")*, así como de la venta a los bancos de los contratos de venta condicional que realiza y por los servicios que presta a los bancos. Del contrato antes analizado se desprende que dichos servicios son transacciones similares o idénticas a las que un banco o institución financiera ejecuta, aunque Reliable propiamente no sea un banco o una institución financiera. A ésta se le exige el cumplimiento tanto de las leyes locales así como de las federales, precisamente relacionadas con el negocio de bancos o instituciones financieras. Se le requiere, además, seguir la reglamentación de ciertas agencias encargadas de fiscalizar transacciones y operaciones bancarias. De Reliable no cumplir con dichas obligaciones, no solamente estaría violando el acuerdo de servicios con el banco o la institución financiera, sino que estaría sujeta a las penalidades pertinentes.

Por otro lado, cabe destacar que la ley dispone que será negocio financiero *"cualquier otra actividad de naturaleza similar"* a los servicios y transacciones realizadas por las entidades allí especificadas, ya sea por esas o por *"cualquier industria o negocio"*. Como vemos, no se ha clasificado a Reliable como negocio financiero por el hecho de prestar servicios a las instituciones bancarias, sino por la naturaleza de sus servicios.

La Ley de Patentes Municipales, *supra*, fue enmendada luego de las decisiones de *American Express* y la de *The Chase Manhattan Bank*, antes citados. La enmienda sufrida en el año 1991 recoge en su lenguaje la amplitud que el legislador tuvo en mente al aprobarla originalmente, amplitud reconocida en toda la jurisprudencia interpretativa del Tribunal Supremo relacionada con esta ley. En virtud de las expresiones vertidas principalmente en estos dos casos, los servicios rendidos por Reliable a otros bancos o entidades financieras, constituye un *"negocio financiero"* sujeto al pago de patentes municipales a la tasa contributiva que le corresponde.

Finalmente, cabe señalar que la apelante también realiza gestiones tales como: obtención de los documentos necesarios para imponer gravamen sobre los vehículos de motor; reposesiones de éstos; procedimientos de cobro; y aquellos otros necesarios para poder vender los vehículos reposeídos. Podemos señalar que estas gestiones se asemejan o son similares a las que realizan las agencias de cobro las cuales están expresamente incluidas dentro de la definición de *"negocio financiero"* de la Ley de Patentes Municipales, *supra*. En consecuencia, por esta razón adicional no procede excluir a Reliable de lo que constituye *"negocio financiero"*, a tenor con la ley.

El Tribunal Superior no erró al concluir que Reliable es un *"negocio financiero"*, bajo la Ley de Patentes Municipales.

## IV

En el tercer error, alega Reliable que el Tribunal Superior incidió al resolver que no existe una doble tributación. De acuerdo a Reliable, dicha doble tributación se debe a la imposición de idéntica tasa contributiva al mismo volumen de negocio, el cual se genera de la misma actividad económica. Fundamenta esta alegación en la premisa de que ella recibe los fondos que pagan los clientes de los bancos como fiduciaria y que siendo los bancos los dueños de los mismos, éstos son los que incluyen en sus planillas como volumen de negocios las sumas y pagan las contribuciones sobre las patentes, como negocio financiero. De acuerdo a lo anterior, señala que la decisión del Tribunal Superior tiene el efecto de permitir que el volumen de negocio que surge del contrato de venta condicional, sea tributable para dos entidades distintas, al mismo tipo contributivo.

En primer término, es preciso aclarar que el volumen de negocios de Reliable no está en controversia en este caso. El Municipio tomó como base para la determinación de las deficiencias, el volumen de negocios que el propio contribuyente informó en sus planillas. Como bien señaló el Tribunal Superior en su sentencia, Reliable no ha puesto en duda el volumen de negocios que informó. Lo que se plantea en este caso es si a dicho volumen de negocios, debe imponérsele el tipo de contribución que corresponde a los negocios financieros u otro menor, según reclama Reliable. En vista de lo anterior, es evidente que Reliable no puede reclamar la doble tributación.

Por otro lado, también debemos señalar que el volumen de negocios informado por Reliable es aquél que corresponde precisamente a sus operaciones. Este volumen de negocios constituye en gran medida los pagos *("fees")* que recibe Reliable por los servicios que rinde a los bancos.

Claramente se trata de un volumen de negocios totalmente distinto al que puedan informar los bancos en sus planillas.

Cabe mencionar, que los hechos del caso de *Las Piedras Construction Corp. v. Municipio de Dorado*, ___ D.P.R. ___, **94 JTS 4**, citado por Reliable, son totalmente distinguibles a los de este caso. En aquél se impuso una doble contribución a un mismo contribuyente, lo cual no ocurre en el caso de autos. En adición, tampoco se configura el criterio de que la imposición contributiva sea sobre la *"misma propiedad"*. La contribución sobre la patente en nuestro caso es por el *"volumen de negocios"* que corresponde a Reliable, independientemente del que pueden tener e informar las instituciones financieras con las cuales hace negocio ésta.

## V

Los errores cuarto y quinto los discutiremos conjuntamente.

Debemos examinar si el resultado de una investigación previa, donde se determinó por el Municipio que Reliable no se dedicaba a negocio financiero, constituye una *"práctica administrativa"* que le impedía revocar retroactivamente la misma. Además, pasaremos juicio si el Municipio está impedido de imputar las deficiencias objeto de este caso bajo la doctrina de actos propios, *"estoppel"*.

Los hechos que dan margen a las alegaciones anteriores las tomamos según los expone Reliable en su escrito de apelación, así como de los documentos que se anejaron a éste. De éstos se desprende que el 7 de abril de 1988 el Municipio le notificó a Reliable una deficiencia para el año fiscal 1987-88. El 26 de agosto de 1991 el Municipio le escribió a Reliable informándole que había dado visto bueno a su solicitud para el año fiscal 1987-88, esto es, dejando sin efecto la deficiencia. El 25 de marzo de 1992, el Municipio emitió una certificación negativa de deuda de Reliable para el año fiscal 1990-91 y otra igual, el 31 de marzo de 1993, para el año fiscal 1992-93.

Aun reconociendo como cierta la alegación de Reliable de que el Municipio aceptó a través de la comunicación del 26 de agosto de 1991 que la actividad comercial de ésta no estaba enmarcada dentro de la definición de *"negocio financiero"* de la Ley de Patentes Municipales, para el año fiscal 1987-88, no podemos concluir que se trata de una *"práctica administrativa"*. El hecho de que en un año contributivo en particular se hubiese aceptado la postura de Reliable, no quiere decir que la misma no pueda ser variada o corregida para otros años contributivos posteriores.

Una práctica administrativa sirve de guía interpretativa de un estatuto y normalmente tiene gran peso ante los tribunales, a menos que se determine que ha habido abuso de discreción. Véase Op. Srio. Justicia Núm. 14 de 1973. Se ha resuelto por el Tribunal Supremo que ésta

tiene un peso peculiar cuando envuelve una interpretación contemporánea de un estatuto por los hombres que tienen la responsabilidad de ponerlo en vigor, *Brugal & Co. v. Buscaglia,* 64 D.P.R. 903 (1945).

En términos generales, el Tribunal Supremo de Puerto Rico ha reconocido que existe una práctica administrativa cuando ha mediado una interpretación administrativa sobre algún principio expuesto en un reglamento, y la misma ha estado vigente durante muchos años. Así, por ejemplo, en *Puerto Rico Ilustrado v. Buscaglia,* 64 D.P.R. 914, 935-38 (1946) se reconoció que la interpretación administrativa del tesorero, del inciso 27 de la Ley Núm. 83 del 24 de julio de 1931, hecha mediante reglamento, constituía una práctica administrativa. Dicha interpretación había estado vigente durante muchos años. En *Brugal & Co. v. Buscaglia, supra,* se concluyó que una carta circular del tesorero enviada a todos los colectores de rentas internas y la cual estuvo vigente durante largo tiempo, constituyó una práctica administrativa. También nuestro Tribunal Supremo ha concluido que la conducta del Tesorero, al omitir tasar acciones de corporaciones domésticas durante veinte años, constituye una práctica administrativa que obliga su cumplimiento, *Sucn. Giusti v. Trib. Contribuciones,* 70 D.P.R. 117, 142 (1949). Cabe señalar que en cada uno de los casos antes citados, la interpretación administrativa o el reglamento estuvo en vigor durante largos períodos de tiempo.

En el caso ánte nosotros, según señaláramos anteriormente, el Municipio expidió tan sólo dos certificaciones de no deuda para los años 1990-91 y 1992-93, después de la determinación de que no tributaría como negocio financiero para el año 1987-88. Es necesario destacar que *"una golondrina no hace verano", Sucn. Giusti v. Trib. Contribuciones, supra,* a la pág. 143. Tampoco la determinación que hizo el Municipio para dicho año 1987-88 tiene el alcance de un *"ruling",* donde de ordinario se hace un análisis completo de una situación contributiva particular de un contribuyente en atención a una consulta formal. La comunicación en este caso es sumamente parca e insuficiente para que pueda considerarse un *"ruling".*

Por otra parte, la Ley de Patentes Municipales provee para que el Municipio investigue y tase las contribuciones sobre patentes municipales, hasta cuatro (4) años después de haberse rendido la declaración. 21 L.P.R.A. Sec. 651r. Por ello, el Municipio puede válidamente revisar y tasar correctamente las planillas rendidas por Reliable para los años en controversia, aún cuando expidió las certificaciones negativas de deudas para dichos años y de que hubiese aceptado que no procedía que tributara como *"negocio financiero"* para el año particular 1987-88. Por esta razón, no procede la defensa de actos propios *("estoppel")* contra el Municipio.

En adición, en Puerto Rico, la doctrina de actos propios generalmente no aplica contra el Estado cuando está envuelta una cuestión de interés público. *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355 (1978); *Mendoza Aldarondo v. Asociación de Empleados,* 94 D.P.R. 564 (1967); *Infante v. Tribunal Examinador de Médicos,* 84 D.P.R. 308, 316 (1961). En consecuencia, se reconoce la facultad al Estado para corregir los errores en los cuales haya incurrido.

No puede quedar dudas sobre la política pública que rodea el cobro de patentes municipales. Nuestro Tribunal Supremo ha reconocido que las facultades impositivas de los municipios [para cobrar patentes municipales] *"es un problema complejo de política pública...".* *American Express Co. v. Municipio de San Juan, supra,* a la pág. 347; *Molinos de Puerto Rico v. Municipio de Guaynabo,* 105 D.P.R. 470, 474 (1976). El interés público envuelto en la recaudación de contribuciones de parte de los municipios a través de las patentes municipales estriba en que el producto de las mismas se usará para cubrir las atenciones de sus presupuestos, tales como el pago de empréstitos o mejora pública en beneficio directo de la sección urbana o rural sujeta a contribución, y proveer más servicios

directos a la ciudadanía *American Express Co. v. Municipio de San Juan, supra,* págs. 345 y 347. Todo ello justifica la interpretación tan amplia que se le da a la Ley de Patentes Municipales, y la imposibilidad de aplicar la doctrina de actos propios al Municipio de San Juan en este caso.

## VI

Finalmente, señala Reliable en el sexto error que el Municipio está impedido de alterar retroactivamente la interpretación sobre la aplicación de *"negocio financiero"*, ya que se le estaría privando de su propiedad sin el debido procedimiento de ley. Este error no fué discutido por Reliable en su escrito de apelación y se limitó prácticamente a citar el caso de *Pyramid Products v. Buscaglia,* 64 D.P.R. 828 (1945), para apoyar su contención.

Como expresáramos anteriormente, la Ley de Patentes Municipales faculta al Municipio a revisar las planillas y tasar la contribución sobre la patentes municipales, dentro de los cuatro (4) años después de haberse rendido las mismas. 21 L.P.R.A. Sec. 651r. El hecho de que en una investigación de un año en particular, se hubiese determinado que las operaciones de Reliable no constituían negocio financiero, no impide el que para otros años contributivos subsiguientes el Municipio pueda variar su criterio o corregir su equivocación. Ya hemos resuelto que en este caso no se constituyó una *"práctica administrativa"* que obligue al Municipio.

El caso de *Pyramid Products v. Buscaglia, supra,* es distinguible al caso de autos toda vez que en aquél claramente se había establecido mediante legislación y consulta administrativa que el contribuyente no tenía que tributar por el producto importado (gasolina), cuando no era para el consumo en la isla. La nueva ley que se aprobó, llamada *"curative"* o *"remedial statutes",* se declaró inconstitucional por nuestro Tribunal Supremo, al aplicarse retroactivamente sobre transacciones consumadas bajo la ley anterior que eximía del pago contributivo. Por ello se resolvió que se privaba al contribuyente de su propiedad sin el debido procedimiento de ley.

En nuestro caso, Reliable no puede argumentar que tenía derecho a no tributar las patentes municipales como negocio financiero para los años en controversia por todas las razones expuestas en esta Sentencia.

## VII

No habiéndose cometido los errores imputados, se confirma la sentencia dictada el 6 de diciembre de 1994 por el Tribunal Superior, Sala de San Juan.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz<br>
Secretaria General

### ESCOLIOS 95 DTA 173

1. Obra en autos copia del contrato entre Reliable y Ponce Federal Bank del 28 de febrero de 1991, el cual es similar a otros otorgados con otras instituciones bancarias, para fechas distintas.

2. Véase págs. 11 y 12 de la sentencia donde se discute la alegada práctica administrativa.

3. Véase del Servicing Agreement lo siguiente: pág. 6, cláusula 4(j); pág. 9, cláusula 6; pág. 10, cláusula 8; y pág. 14, cláusula 11.

4. Véase la definición de Agencia de Cobro dispuesta en la Ley de Agencias de Cobros, Ley Núm. 143,

aprobada el 21 de junio de 1968. 10 L.P.R.A. Sec. 981a (b).

**5.** De los Estados Financieros e Informe de los auditores de Reliable para el año fiscal 1991, los cuales se acompañaron por el Municipio con su oposición a la solicitud de sentencia sumaria de Reliable ante el Tribunal Superior, se desprende que los pagos *("fees")* que recibió para dicho año ascendieron a la suma de $4,426,146.00.

**6.** Las deficiencias contributivas para estos años fueron notificadas con posterioridad a las certificaciones negativas de deudas.